**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

APR 1 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| ARIZONA STATE LEGISLATURE, by and through the President of the Arizona Senate, Warren Petersen, and the Speaker of the Arizona House of Representatives, Steve Montenegro; KIMBERLY YEE, in her official capacity as Treasurer of the State of Arizona; COUNTY OF MOHAVE; TOWN OF COLORADO CITY, Arizona; TOWN OF FREDONIA, Arizona,<br><br>       Plaintiffs - Appellants,<br><br> v.<br><br>JOSEPH R. BIDEN, in his official capacity as President of the United States; DEB HAALAND, in her official capacity as Secretary of the Interior; UNITED STATES DEPARTMENT OF THE INTERIOR; TRACY STONE-MANNING, in her official capacity as Director of the Bureau of Land Management; UNITED STATES BUREAU OF LAND MANAGEMENT; TOM VILSACK, in his official capacity as Secretary of Agriculture; UNITED STATES DEPARTMENT OF AGRICULTURE,<br><br>       Defendants - Appellees, | No. 25-1370<br><br>D.C. Nos.<br>3:24-cv-08026-SMM<br>3:24-cv-08027-SMM<br><br>MEMORANDUM[*] |

---

    [*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

STATE OF ARIZONA; KATIE HOBBS,
Governor of Arizona,

                Intervenor-Defendants -
Appellees.

Appeal from the United States District Court
for the District of Arizona
Stephen M. McNamee, District Judge, Presiding

Argued and Submitted February 3, 2026
Phoenix, Arizona

Before: CALLAHAN, OWENS, and FRIEDLAND, Circuit Judges.

This appeal arises from a challenge to a presidential proclamation (the "Proclamation") that created a national monument in Arizona pursuant to the President's authority under the Antiquities Act of 1906. *See* Establishment of the Baaj Nwaavjo I'tah Kukveni Ancestral Footprints of the Grand Canyon National Monument, 88 Fed. Reg. 55331 (Aug. 8, 2023); 54 U.S.C. §§ 320301-303. The Proclamation prohibits all mining, mineral leasing, and geothermal leasing on monument land, 88 Fed. Reg. at 55339, although mining on the land had already been prohibited since 2012 under a ban issued by the Department of the Interior that is set to last until 2032, or later if it is extended (the "2012 Withdrawal"), *see* Public Land Order No. 7787, 77 Fed. Reg. 2563 (Jan. 18, 2012); 43 U.S.C. § 1714 (allowing extensions of federal land withdrawals). The monument is located on federal land, but it touches or surrounds some parcels of state land. *See* 88 Fed.

Reg. at 55343-44.

Plaintiffs-Appellants are the Arizona State Legislature, the Arizona State Treasurer, and three local governments in Arizona—Mohave County, Colorado City, and the Town of Fredonia. Plaintiffs sued the President as well as several other federal officers, seeking to have the Proclamation set aside, and the State of Arizona and the Governor of Arizona intervened as Defendants. Plaintiffs allege that the Proclamation injures them in numerous ways, but the district court dismissed Plaintiffs' Complaint, concluding that none of them had standing. We have jurisdiction under 28 U.S.C. § 1291. Reviewing de novo, *Barke v. Banks*, 25 F.4th 714, 718 (9th Cir. 2022), we affirm.

1. The three local governments allege a future injury from lost tax revenue that they hoped to collect from companies that would mine uranium once the 2012 Withdrawal lapses. To qualify as an "injury in fact" for purposes of establishing standing, a future injury must be "imminent," not "speculative." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citation modified). Thus, "allegations of *possible* future injury are not sufficient." *Id.* (citation modified). When the plaintiff's injury depends on "unfettered choices" made by third parties, "standing is not precluded, but it is ordinarily substantially more difficult to establish." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 562 (1992) (citation modified).

3                                                                                              25-1370

Under those principles, the local governments' alleged injury is insufficient for standing. Their alleged loss of future tax revenue depends on uranium prices being sufficiently high in 2032 (or whenever the 2012 Withdrawal lapses) such that third-party companies would choose to begin mining. But it is speculative whether the right economic conditions and incentives for uranium mining will exist so far into the future. Accordingly, the allegations amount to only a "*possible future injury.*" *Clapper*, 568 U.S. at 409.

To the extent the local governments allege that, separate and apart from anticipated uranium mining, they are presently losing tax revenue from the ban on mineral and geothermal leasing, that injury is equally speculative. Plaintiffs fail to allege that any entity has ever sought to engage in "mineral or geothermal leasing," or that the monument land even contains those resources.

2. Colorado City alleges that the Proclamation "threatens [its] water supply" because some of its water comes from an aquifer located under the monument and federal actors may decide to "restrict[]" that water supply in the future. Those allegations are similarly insufficient for standing. The Proclamation by its plain terms does not "alter the valid existing water rights of any party, including the United States," 88 Fed. Reg. at 55339, and there is otherwise no reason to speculate that the federal government will "reduce Colorado City's water supply," as Colorado City fears. *See Clapper*, 568 U.S. at 416 (holding that plaintiffs

4

"cannot manufacture standing . . . based on their fears of hypothetical future harm that is not certainly impending").

3. The Arizona Legislature asserts that it is injured because (1) the Proclamation "strips [it] of its prerogative" power to sell, lease, and set royalty rates for state land, particularly the parcels surrounded by the monument, and (2) the Proclamation allegedly reduces the value of nearby state land and deprives the state of tax revenue it could collect from companies who would develop the land. The State Treasurer alleges the second injury as well, observing that the Treasurer has a "role in ensuring that Arizona receives the highest and best value" for its state land. Neither injury suffices for standing.

With respect to the first injury, contrary to the Legislature's assertion, the Proclamation does not strip the Legislature of any of its powers—the Legislature may continue to manage and dispose of state land as it sees fit. *See* 88 Fed. Reg. at 55338-42; *see also Newdow v. U.S. Cong.*, 313 F.3d 495, 498-99 (9th Cir. 2002) (holding that a legislature does not suffer a "concrete and particularized" injury where its "own 'powers and responsibilities' are not really under attack"). Essentially, the Legislature alleges that the Proclamation may change the content of future legislation regarding state land, but a legislature "suffers no legally cognizable injury from changes to the *content* of legislation its future members may elect to enact." *Va. House of Delegates v. Bethune-Hill*, 587 U.S. 658, 670

25-1370

n.6 (2019).

With respect to the second injury, any financial harm to the State—such as reduced value of land or lost tax revenue—is a "direct injury to the State itself." *Wyoming v. Oklahoma*, 502 U.S. 437, 449 (1992). In the context of suits to redress such injuries, "a State must be able to designate agents to represent it in federal court." *Hollingsworth v. Perry*, 570 U.S. 693, 710 (2013). Absent such a designation, a party lacks "standing to represent the State's interests." *Bethune-Hill*, 587 U.S. at 663. Neither the Legislature nor the Treasurer points to any law designating them as agents to represent the State, so neither has standing to assert the State's injuries. *See* Ariz. Rev. Stat. § 41-193(A)(3) (providing the Attorney General with authority to "[r]epresent this state in any action in a federal court"); Ariz. Rev. Stat. § 37-102(C) (providing the Attorney General, at the request of the State Land Department, with authority to "prosecute and defend all actions and proceedings to protect the interest of this state in lands within this state or the proceeds of lands within this state").

4. Plaintiffs next allege that they are injured because they "have to divert resources to address[] the effects of the Proclamation." In particular, Plaintiffs assert that they are being "forced" to divert their resources to activities such as "passing laws," "holding hearings," and "publicly commenting" on issues relating to the monument. But a plaintiff may not "manufacture" an injury by "simply

25-1370

choosing to spend money." *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010).  A plaintiff "must instead show that it would have suffered some other injury if it had not diverted resources to counteracting the problem."  *Id.*  The allegations here fail because Plaintiffs fail to identify any "other injury" they would suffer if they stopped diverting their resources as described.  *Id.*; *see also Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 394 (2024) ("[A]n organization that has not suffered a concrete injury caused by a defendant's action cannot spend its way into standing[.]").

5. Finally, Plaintiffs allege that, as "consumer[s] of energy," they may suffer economic harm from paying higher prices for energy in the future due to the ban on uranium mining.  That theory fares no better than the others.  Future energy prices depend on many unknown variables and the "unfettered choices" of innumerable third parties.  *Lujan*, 504 U.S. at 562.  Any future economic harm from higher energy prices caused by the Proclamation is accordingly far too speculative to support standing.  *See Clapper*, 568 U.S. at 409.

**AFFIRMED.**